**FILED**

AUG 0 2 2013 *MB*

**THOMAS G BRUTON**
**CLERK, U S DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MANUEL SUASTEGUI #R44684
(Full name and prison number)
(Include name under which convicted)
PETITIONER

vs.

GREGORY GOSSETT (WARDEN)
(Warden, Superintendent, or authorized
person having custody of petitioner)
CUSTODIAN, and

**(Fill in the following blank only if judgment**
**attacked imposes a sentence to commence**
**in the future)**

ATTORNEY GENERAL OF THE STATE OF

_____
(State where judgment entered)

13 C 5539
Judge John J. Tharp, Jr.
Magistrate Judge Young B. Kim

Case Number of State Court Conviction:

99 CR 21790 (02)

**PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY**

1. Name and location of court where conviction entered:

   CIRCUIT COURT OF COOK COUNTY, ILLINOIS

2. Date of judgment of conviction:

   NOVEMBER 20, 2003

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

   FIRST DEGREE MURDER

4. Sentence(s) imposed:
   45 YEARS

5. What was your plea? (Check one)
   (A) Not guilty        (X)
   (B) Guilty            (  )
   (C) Nolo contendere   (  )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

   N/A

Revised: 11/03/11

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):    Jury (X)      Judge only ( )

2. Did you testify at trial?    YES ( )      NO    (X)

3. Did you appeal from the conviction or the sentence imposed? YES (X)   NO ( )

     (A) If you appealed, give the

         (1) Name of court:   APPELLATE COURT OF ILLINOIS (1ST DIST) NO. 1-05-2429

         (2) Result:   CONVICTION AFFIRMED (ORAL ARGUMENTS MAY 30 2007)

         (3) Date of ruling:   JUNE 13, 2007 | PEO. V SUASTEGUI 871 N E. 2d 145

         (4) Issues raised:
1) COURT ERRED IN DENIAL OF MOTION TO DISMISS INDICTMENT. 2) COURT ERRED IN EXCLUDING

EXCULPATORY EVIDENCE. 3) INSUFFICIENT EVIDENCE TO SUSTAIN CONVICTION. 4) 6TH AMEND.

VIOLATION WHEN TESTIMONIAL EVIDENCE WAS ADMITTED WITHOUT THE OPPORTUNITY FOR CROSS-
EXAMINATION. 5) ADMITION OF PREJUDISUAL PHOTOS OF GANG TATTOOS.

     (B) If you did not appeal, explain briefly why not:

         N/A

4. Did you appeal, or seek leave to appeal, to the highest state court? YES (X)      NO ( )

     ( ) If yes, give the

                  ILLINOIS SUPREME COURT
         (1) Result:   PETITION FOR LEAVE TO APPEAL DENIED – NO. 105227

         (2) Date of ruling:   NOVEMBER 29, 2007

         (3) Issues raised:   6TH AMEND. VIOLATION WHEN TESTIMONIAL EVIDENCE WAS ADMITTED

WITHOUT THE OPPORTUNITY FOR CROSS EXAMINATION. 2) INSUFFICIEN EVIDENCE TO

SUSTAIN CONVICTION. 3) COURT ERRED IN ~~DENIED DISCORDS~~ EXCLUDING EXCULPATORY EVIDENCE.

     (B) If no, why not:   N/A

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( ) No (X)

     If yes, give (A) date of petition:   N/A      (B) date *certiorari* was denied:   N/A

Revised: 11/03/11

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES (X) NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A. Name of court: CIRCUIT COURT OF COOK COUNTY, ILLINOIS

   B. Date of filing: MAY 23, 2008

   C. Issues raised: I) PETITIONER WAS DENIED DUE PROCESS RIGHT UNDER BRADY V MARYLAND

   IN LIGHT OF NEWLY DISCOVERED EVIDENCE AND BY ALLOWING PROSECUTION'S KEY WITNESS

   PERJURED TESTIMONY IN DENYING ANY PROMISE OF LENIENCY (CONTINUE ON ATTACHED PAGE 8)

   D. Did you receive an evidentiary hearing on your petition?        YES ( ) NO (X)

   E. What was the court's ruling?    SECOND STAGE DISMISSAL

   F. Date of court's ruling:   APRIL 27, 2011

   G. Did you appeal from the ruling on your petition?        YES (X) NO ( )

   H. (a)  If yes, (1) what was the result?    APPELLATE DEFENDER FILED .. (CONTINUE ON ATTACHED PAGE 9)

           (2) date of decision:     NOVEMBER 5, 2012

      (b)  If no, explain briefly why not: N/A

   I. Did you appeal, or seek leave to appeal this decision to the highest state court?

      YES (X) NO ( )

      (a)  If yes, (1) what was the result?   LEAVE TO APPEAL DENIED - NO. 115448

           (2) date of decision:     MARCH 27, 2013

      (b)  If no, explain briefly why not:

                         N/A

Revised: 11/03/11

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?    YES ( )    NO (x)

   A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

      1.   Nature of proceeding     N/A

      2.   Date petition filed     N/A

      3.   Ruling on the petition     N/A

      4.   Date of ruling     N/A

      5.   If you appealed, what was
         the ruling on appeal?     N/A

      6.   Date of ruling on appeal     N/A

      7.   If there was a further appeal,
         what was the ruling ?     N/A

      8.   Date of ruling on appeal     N/A

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?    YES ( )    NO (x)

   A. If yes, give name of court, case title and case number:    N/A

   B. Did the court rule on your petition? If so, state

      (1) Ruling:    N/A

      (2)   Date:    N/A

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?    YES ( )    NO (x)

   If yes, explain:

      N/A

Revised: 11/03/11

**PART III – PETITIONER'S CLAIMS**

1.   State briefly every ground on which you claim that you are being held unlawfully.  Summarize briefly the facts supporting each ground.  You may attach additional pages stating additional grounds and supporting facts.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A)  Ground one 14TH AMENDMENT VIOLATION UNDER BRADY V MARYLAND 83 S. Ct. 1194
Supporting facts (tell your story briefly without citing cases or law):

THE PROSECUTION WITHHELD IMPEACHING EVIDENCE REGARDING THEIR KEY WITNESS IGNACIO SALGADO AS HE WAS THE ONLY WITNESS IMPLICATING PETITIONER SHASTEGUI IN THIS CASE WHICH TOOK PLACE IN SEPTEMBER '95. SALGADO WAS ARRESTED ON JANUARY '98 FOR AT LEAST 2 DRUG OFFENCES (DELIVERIES) IN A STING OPERATION CONDUCTED BY THE CHICAGO POLICE. ACCORDING TO SALGADO'S TRIAL TESTIMONY "HE" SOUGHT OUT THE DETECTIVES TO RELATE THE ALLEGED EVENTS ABOUT THIS CASE. (SEE EXIBIT-1) ON AUGUST 12 '98 SALGADO'S CASES WERE RESOLVED BY A PLEA OF GUILTY AND RECEIVED 30 MONTHS PROBATION, 130 HOURS OF COMMUNITY SERVICE, DRUG TESTING AND TREATMENT. (SEE EXIBITS 2, 2A) PETITIONER WAS ARRESTED SEPTEMBER 1 '99, OVER A YEAR AFTER SALGADO'S STATEMENTS TO POLICE. ON MAY 11, 2000, WHILE PETITIONER WAS AWAITING TRIAL, A VIOLATION OF PROBATION WAS FILED BY... (CONTINUE ON ATTACHED PAGE 9)

(B)  Ground two 6TH AMENDMENT VIOLATION, INEFFECTIVE ASSISTANCE OF TRIAL AND
Supporting facts: APPELLATE COUNSEL.

TRIAL COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED TO INVESTIGATE AND DISCLOSE IMPEACHING EVIDENCE THAT WAS READILY AVAILABLE TO CONFRONT PROSECUTION'S KEY WITNESS. SPECIFICALLY, (I) SALGADO'S USE (POSSESSION) OF COCAINE AND MARIJUANA DURING HIS PROBATION, (II) POSITIVE DRUG TESTS FOR COCAINE AND MARIJUANA, (III) HAVING COMPLETED 22 MONTHS (NOT 1 YEAR AS HE TOLD THE JURY) OF HIS 30 MONTHS PROBATION, (IV) LIEYING ABOUT PROVIDING PROOF OF WORKING 55 HRS A WEEK WHICH ALLEGEDLY EXCUSED HIS INCOMPLETE COMMUNITY SERVICE AND (V) THAT WHILE HE APPEARED IN COURT FOR HIS VIOLATION OF PROBATION HEARING HE ADMITTED TO THE COURT THAT HE WAS UNDER THE INFLUENCE OF DRUGS AND WOULD TEST POSITIVE FOR DRUGS, ALL WITHOUT COSEQUENCE. COUNSEL COULD'VE PROCURED RECORD OF TRANSCRIPTS TO INPEACH PROSECUTION'S KEY WITNESS BUT HE DID NOT. (CONTINUE ON ATTACHED PAGE 11)

Revised: 11/03/11

(C) Ground three 6TH AMENDMENT VIOLATION — TESTIMONIAL EVIDENCE WAS ADMITTED WITHOUT
Supporting facts: THE OPPORTUNITY FOR CROSS-EXAMINATION

AT PETITIONER'S MURDER TRIAL, PROSECUTION'S WITNESS DETECTIVE WOJCIK TESTIFIED
DURING CROSS-EXAMINATION TO THE FOLLOWING: "TRIAL COUNSEL: AFTER YOU SPOKE TO
ANDY (MONTANEZ), THEN YOU WENT OUT TO LOOK FOR RAMIRO ALVAREZ (CO-DEFENDANT) IS
THAT RIGHT? WOJCIK: WELL, WE TALKED TO ANDY, AND HE CORROBORATED WHAT IGGY
(SALGADO) TOLD US. SO AT THAT POINT, WE WENT TO SPEAK TO IGGY AGAIN" PETITIONER
CONTENDS THAT DETECTIVE'S ANSWER WAS TESTIMONIAL AND IT WAS PREJUDICIAL.
IGNACIO SALGADO IMPLICATED ANDY MONTANEZ IN THIS CASE. AFTER HIS ARREST
MONTANEZ MADE STATEMENTS TO DETECTIVES IMPLICATING HIMSELF AS A "LOOKOUT"
IN THE VICTIM'S MURDER; SHORTLY THEREAFTER MONTANEZ TESTIFIED TO
THE GRAND JURY.                                         (CONTINUE ON ATTACHED PAGE 12)

(D) Ground four 6TH, 14 AMEND VIOLATION DENYING DEFENDANT A MEANINGFUL OPPORTUNITY TO
Supporting facts: PRESENT A COMPLETE DEFENSE.

AT THE BEGINNING OF PETITIONER'S MURDER TRIAL, THE PROSECUTION WAS PLANING ON NOT USING
AN ORAL STATEMENT ATTRIBUTED TO PETITIONER, BUT IN MID TRIAL THE PROSECUTION DECIDED THAT
IT WAS GOING TO PUT IT INTO EVIDENCE (SEE EXIBITS 12, 12A) THIS SUDDEN CHANGE OF PLANS REGARDING
THIS EVIDENCE PREJUDICED THE OUTCOME OF THE TRIAL AND IT DEPRIVED PETITIONER OF A FAIR TRIAL BECAUSE
IT INTERFERED W. TH TRIAL COUNSEL'S TRIAL STRATEGY. TRIAL COUNSEL OBJECTED AND ASKED TO REOPEN HIS
OPENING STATEMENTS BUT THE COURT DENIED HIS REQUEST. (SEE EXIBIT 13) TRIAL COUNSEL WAS
NOT GIVEN THE OPPORTUNITY TO TELL THE JURY THE CIRCUMSTANCES UNDER WHICH THIS ORAL STATEMENT
WAS ALLEGEDLY MADE. HE UNABLE TO ADDRESS PETITIONER'S STATE OF MIND AT TIME OF HIS
INTERROGATION, HIS EMOTION ECT. THE JURY HAD QUESTIONS ABOUT THIS ORAL STATEMENT AND
WAS CONFUSED. (SEE EXIBIT 14)

2.  Have all grounds raised in this petition been presented to the highest court having jurisdiction?
    YES (X)   NO ( )

3.  If you answered "NO" to question (2), state briefly what grounds were not so presented and why not:

    N/A

Revised: 11/03/11

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing GEORGE E. BECKER – 33 N. LASALLE ST. (S. 3300) CHI. IL. 60602

(B) At arraignment and plea JOSEPH R. LOPEZ – 53 N. JACKSON BLVD (S. 1651) CHI. IL. 60604

(C) At trial JOSEPH R. LOPEZ – 53 N. JACKSON BLVD (S. 1651) CHICAGO, IL. 60604

(D) At sentencing THOMAS C. BRANDSTRADER – 53 N. JACKSON BLVD (S. 615) CHI. IL. 60604

(E) On appeal THOMAS C. BRANDSTRADER – 53 N. JACKSON BLVD (S. 615) CHI. IL. 60604

(F) In any postconviction proceeding TIMOTHY J. LEEMING (P.D.) 69 N. WASHINGTON ST. 15TH FL CHI.

(G) Other (state): KRISTINE A. NEAL (APP. DEFENDER) 203 N. LASALLE ST (24TH FLR) CHI.

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( ) NO (X)

Name and location of the court which imposed the sentence: N/A

Date and length of sentence to be served in the future N/A

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: 7/19/13
(Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_____
(Signature of petitioner)

R44684
(I.D. Number)

IRCC P.O. BOX 999 CANTON, IL. 61520
(Address)

Revised: 11/03/11

## PART II – COLATERAL PROCEEDINGS (CONTINUED)

1) C. ISSUES RAISED: AND BY FAILING TO DISCLOSE IMPEACHING EVIDENCE THAT BORE DIRECTLY ON THE PROSECUTIONS KEY WITNESS CREDIBILITY AND INTEREST TO TESTIFY FALSELY.

2) PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE 6TH AMENDMENT TO THE U.S. CONSTITUTION WHEN TRIAL AND APPELLATE COUNSEL FAILED TO INVESTIGATE AND DISCLOSE IMPEACHING EVIDENCE THAT WAS READILY AVAILABLE.

3) PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON APPEAL BECAUSE COUNSEL FAILED TO PETITION THE COURT TO RECONSIDER IT'S RULING OF DENIAL OF PETITIONER'S PRE-TRIAL MOTION TO QUASH ARREST UPON ANDY MONTANEZ' RECANTATION OF HIS STATEMENTS AND REFUSAL TO TESTIFY AT TRIAL AND IGNACIO SALGADO'S TRIAL TESTIMONY WHICH LACKED INDICIA OF RELIABILITY AND 4TH AMENDMENT AND 14TH AMENDMENT VIOLATION FOR WARRANTLESS ARREST.

4) PETITIONER WAS DENIED HIS RIGHT TO DUE PROCESS AND FAIR TRIAL UNDER THE 14TH AND 6TH AMENDMENTS TO THE U.S. CONSTITUTION WHEN THE TRIAL COURT DECLINED TO ANSWER JURY QUESTIONS OF RELEVANT FACT AND COURT/PROSECUTION ADMITTED EVIDENCE IN MID-TRIAL THUS CONFUSING THE JURY DURING DELIVERATIONS REGARDING QUESTIONS AND INTERFERING WITH DEFENSE TRIAL STRATEGY AND PREJUDICED THE OUTCOME OF THE TRIAL.

5) PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNCEL FOR NOT PRESERVING THE AFOREMENTIONED ISSUES BY OBJECTION AND NOT PRESENTING THESE ISSUES ON POST-TRIAL MOTION AND ON DIRECT APPEAL FOR REVIEW.

PART II — COLATERAL PROCEEDINGS (CONTINUED)

H) A MOTION TO WITHDRAW PURSUANT TO PENNSYLVANIA V FINLEY 481 U.S. 551 (1987) BASED ON HER CONCLUSION THAT AN APPEAL IN THIS CAUSE WOULD BE WITHOUT ARGUABLE MERIT. PETITIONER DISAGREES AND FILED A RESPONSE OBJECTING TO SAID MOTION WITH THE APPELLATE COURT. THE MOTION OF STATE APPELLATE DEFENDER FOR LEAVE TO WITHDRAW AS COUNSEL WAS GRANTED BY THE APPELLATE COURT AND AFFIRMED THE ORDER OF THE CIRCUIT COURT OF SECOND STAGE DISMISSAL OF POST-CONVICTION PETITION. (APPELLATE COURT NO. 1-11-1307)

PART III — PETITIONERS CLAIMS    (CONTINUED)

A) THE PROBATION DEPARTMENT FOR VIOLATING ALL THE CONDITIONS OF HIS PROBATION (SEE EXIBIT 3 — SALGADO'S RECORD OF PROCEDINGS OF HIS V.O.P HEARING FOR HIS DRUG CASES) AT TRIAL, THE PROSECUTION CONCEDED TO THE JURY THAT SALGADO VIOLATED PROBATION BY NOT COMPLEETING HIS COMMUNITY SERVICE <u>BUT WITHHELD THE POSITIVE DRUG TESTS</u> <u>FOR MARIJUANA AND COCAINE</u>. SALGADO'S TRIAL TESTIMONY WAS THAT HE WAS UNABLE TO COMPLETE HIS COMMUNITY SERVICE BECAUSE HE WAS WORKING 55 HOURS A WEEK AND INDICATED THAT UPON THE JUDGE'S REQUEST AT THE V.O.P HEARING HE (SALGADO) WAS TO GET VERIFICATION THAT HE IS WORKING 55 HOURS A WEEK FOR HIS COMMUNITY SERVICE TO BE VACATED. SALGADO CONCEDED TO THE JURY THAT HE SHOWED PROOF OF HIS WORK HOURS, <u>BUT HE NEVER DID</u> (SEE EXIBITS 4, 4A) IN SPITE OF HIS SERIOUS VIOLATIONS OF PROBATION, THE PROSECUTION IN SALGADO'S V.O.P HEARING DID NOT OBJECT, DID NOT RECOMEND ANY SANCTIONS OR MADE ANY ATTEMPT TO IMPOSE ANY PENALIZATION FOR HIS CONDUCT. ALL OF THIS IMPEACHING EVIDENCE WAS NOT PRESENTED TO THE JURY BUT THEY WERE MISLEAD. SALGADO ALSO TESTIFIED THAT HE DID ONLY ONE YEAR OF PROBATION BUT RECORDS REVEAL THAT HE DID 22 MONTHS OF PROBATION. SALGADO HAD A STRONG MOTIVE TO IMPLICATE THE PETITIONER IN THIS CASE AND EVEN A

STRONGER MOTIVE TO TESTIFY FALSELY AT TRIAL, IE., HIS OWN SELF INTEREST IN AVOIDING PRISON TIME FOR 2 DRUG CASES AND PRACTICALLY GUARANTEED BY VIOLATING HIS PROBATION.

FURTHERMORE, AT THE HEARING FOR SALGADO'S V.O.P. HE INDICATED TO THE COURT THAT HE WOULD TEST POSITIVE FOR MARIJUANA ON THAT DAY. THE JUDGE ORDERED HIM TESTED IN A MONTH. THE JUDGE SUGGESTED, "THAT STUFF (DRUGS) STAYS IN THEIR SYSTEM FOR ABOUT 28 DAYS. ISN'T THERE SOMETHIN YOU CAN BUY AT WALGREENS THAT COVERS THIS; GOLD SEAL OR SOMETHING? AT LEAST YOU HAVE BEEN COVERING STUFF LIKE THIS." (PLEASE SEE EXHIBIT 3 – MAY 11, 2000, TRANSCRIPTS OF PROCEEDINGS, PAGES 6–7) WOULD A JURY FIND THAT PROSECUTION WITNESS SALGADO WAS GETTING SPECIAL TREATMENT? IT IS IMPORTANT TO POINT OUT THAT THERE IS NO RECORDS OF ANY RESULTS OF ANY DRUG TESTS ORDERED BY THE JUDGE OR IF IN FACT HE WAS EVER TESTED AT ALL, (SEE EXHIBIT 5 – TRANSCRIPTS OF SALGADO'S CASES) THE PROSECUTION HAD AN IFFIRMATIVE DUTY TO DISCLOSE THESE FACTS, BUT THEY DID NOT. THIS CONSTITUTIONAL VIOLATION WAS NOT CURED BY THE FACT THAT THE JURY WAS APPRAISED OF SALGADO'S CASES; HIS CONVICTIONS AND THAT HE VIOLATED HIS PROBATION. THE JURY WAS ENTITLED TO HAVE THE BENEFIT OF THE DEFENSE'S THEORY IN IT'S ENTIRETY, WHICH WAS THAT SALGADO HAD A "QUID PRO QUO" WITH THE PROSECUTION FOR HIS CASES AND THAT HE RECEIVED LENIENCY ON HIS VIOLATION OF PROBATION BECAUSE HE COULD NOT TESTIFY AT PETITIONERS TRIAL WHILE IN JAIL BECAUSE THAT COULD'VE BEEN ANOTHER FORM OF IMPEACHMENT WHICH DISCREDITED SALGADO'S RELIABILITY AS A WITNESS. THE PROSECUTION'S CASE DEPENDED ALMOST ENTIRELY ON THE STATEMENS AND TRIAL TESTIMONY OF SALGADO AND WITHOUT IT THERE COULD HAVE BEEN NO INDICTMENT AND EVIDENCE TO CARY THE CASE TO THE JURY. SUCH WITNESS CREDIBILITY WAS AN IMPORTANT ISSUE. IT IS IMPORTANT TO POINT OUT THAT

ALTHOUGH SALGADO WAS A KEY WITNESS, HE ONLY TESTIFIED THAT HE SAW PETITIONER SUASTEGUI RUNNING FROM THE SCENE AND DID NOT TESTIFIED THAT HE SAW PETITIONER COMMIT THE MURDER. PETITIONER CONTENDS THAT HAD THE JURY BEEN APPRAISED OF ALL THE AFOREMENTIONED IMPEACHING EVIDENCE THERE IS REASONABLE PROBABILITY OF A DIFFERENT RESULT AT TRIAL AND THAT WITHHOLDING OF SAID EVIDENCE DENIED HIM OF HIS FUNDAMENTAL FAIRNESS AT TRIAL AND ANY ERROR WAS NOT HARMLESS.

PART III - PETITIONER'S CLAIMS (CONTINUED)

B) THE AFOREMENTIONED IMPEACHING ITEMS WERE PROCURED BY THE PETITIONER WITH THE HELP OF FAMILY MEMBERS. THIS EVIDENCE WAS OR SHOULD HAVE BEEN READILY AVAILABLE TO THE DEFENSE AT TRIAL. THE DECISION WHETHER TO IMPEACH A WITNESS IS GENERALLY CONSIDERED A MATTER OF TRIAL STRATEGY, AND FAILURE TO MAKE USE OF OBVIOUSLY USEFULL IMPEACHMENT EVIDENCE AGAINST A KEY WITNESS WAS A DENIAL OF EFFECTIVE ~~EFFECTIVE~~ ASSISTANCE OF COUNSEL.

APPELLATE COUNSEL WAS ALSO INEFFECTIVE BECAUSE HE FAILED TO ATTACK TRIAL COUNSEL'S HANDLING OF THE CASE REGARDING IMPEACHING EVIDENCE IN THE FORM OF A THIRD CASE (DRUG DELIVERY STEMMING FROM SAME STING OPERATION) THAT WAS "NOLLE PROSSED" FOR PROSECUTION'S KEY WITNESS ONCE HE BEGAN TO COOPERATE WITH THE POLICE TO IMPLICATE PETITIONER IN THIS CASE. (SEE EXIBIT 6, A, B, C — CASE NO. 98CR6088)(THIS IMPEACHING EVIDENCE WAS ALSO WITHHELD BY THE PROSECUTION AT TRIAL IN VIOLATION OF BRADY DUE PROCESS) ALTHOUGH APPELLATE COUNSEL ADDRESSED THIS ISSUE TO THE COURT IN A POST-TRIAL MOTION HE DID NOT INVESTIGATE AND THIS DEPRIVED HIM OF A FAIR TRIAL

PART III — PETITIONER'S CLAIMS (CONTINUED)

(C) IN EXCHANGE FOR HIS GRAND JURY TESTIMONY AND TRIAL TESTIMONY HE WAS GIVEN IMMUNITY AND WAS NEVER CHARGED. HOWEVER, AT TRIAL MONTANEZ RECANTED HIS STATEMETS TO INVESTIGATORS, REFUSED TO TESTIFY AND PLEADED HIS FIFTH AMENDMENT RIGHT.

MONTANEZ WAS PORTRAYED TO THE JURY AS A WITNESS'S AND AS A CO-ACTOR IN THIS CASE AND WAS MENTIONED MANY TIMES DURING THE COURSE OF THE TRIAL. IN FACT, TRIAL TESTIMO AS TO WHAT MONTANEZ SAID OR DID WAS OFFERED TO THE JURY BY ALL THE PROSECUTION'S WITNESSES, IGNACIO SALGADO, DETECTIVE WOJCIK AND ASA. STEPHENS AND SUCH REVELATIONS WENT WELL BEYOND THE INVESTIGATIVE PROCESS. TRIAL TESTIMONY OF DETECTIVE WOJCIK RECOUNTS THE INCULPATORY SUBSTANCE OF THE CONVERSATION WITH ANDY MONTANEZ. (SEE EXIBIT 7 — TR. DIRECT EXAM.)

FURTERMORE, THE COLLOQUY OF "ANDY... CORROBORATED WHAT IGGY (SALGADO) TOLD US" WAS NOT CONSIDERED IN IT'S FULL CONTEXT. (SEE EXIBITS 8, A, B, C — TR. CROSS-EXAM) THESE ITEMS ATTACHED HEREIN REVEAL THE ACCUSATORY SUBSTANCE OF THE STATEMENTS MADE BY MONTANEZ DURING HIS INTEROGATION AND HIS GRAND JURY TESTIMONY. MONTANEZ' STATEMENTS — THROUGH DETECTIVE WOJCIK'S TRIAL TESTIMONY — PLACE PETITIONER AS THE SHOOTER AND IT PORTRAYS MONTANEZ AS A WITNESS IN THIS CASE. (SEE EXIBIT 9) AS HE ALSO INDICATED THAT BOTH "TWO WITNESSES ARE CORROBATIVE OF ONE ANOTHER" (SEE EXIBITS 10, 10A — TR. WOJCIK'S TESTIMONY) PETITIONER CONTENDS THAT AFOREMENTIONED COLLOQUYS WERE TESTIMONIAL EVIDENCE IN VIOLATION OF THE CONFRONTATION CLAUSE.

PROSECUTION WITNESS IGNACIO SALGADO ALSO TESTIFIED AT TRIAL ABOUT
ANDY MONTANEZ ALLEGED PARTICIPATION IN THE SHOOTING (SEE EXIBIT II,
A, B - DIRECT EXAM SALGADO TESTIMONY) HE INDICATES THAT CO-DEFENDANT
ALVAREZ HANDED "THESE GUYS (PETITIONER AND MONTANEZ) A GUN," THAT
GATO (PETITIONER) AND ANDY WALKED OFF" AND THAT "5, 10 MINUTES LATER
HE (SALGADO) HEARD SOME SHOOTING" THIS TESTIMONY IS RELEVANT ALSO
BECAUSE IT AGGRAVATES DETECTIVE'S TESTIMONIAL EVIDENCE PRESENTED
AT TRIAL.

     FURTHERMORE, THE TRIAL COURT DID NOT INSTRUCT THE JURY AS
TO THE LIMITING PURPOSE OF ANDY MONTANEZ STATEMENTS THROUGH
DETECTIVE WOJCIK TRIAL TESTIMONY, EVEN IF IT DID, IT WOULD HAVE BEEN
IMPOSSIBLE FOR A REASONABLE JUROR TO FOLLOW. PETITIONER RELIES ON
RAY V. BOATWRIGHT 592 F. 3d 793, (2010 7TH DIST.) IN SUPPORT OF THIS ISSUE
AS IT IS ALMOST IDENTICAL TO PETITIONER'S CASE. PETITIONER ASSERTS
THAT HIS SUBSTANCIAL RIGHTS WERE VIOLATED BECAUSE HE WAS NOT ABLE
TO CROSS-EXAMINE THE ONLY WITNESS WHO DIRECTLY IMPLICATED HIM TO
BEING AT THE SCENE OF THE CRIME, AS TO BEING THE SHOOTER AND WHO
DIRECTLY REFUTED PETITIONER'S CLAIM THE HE (ANDY MONTANEZ) SHOT
THE VICTIM. PETITIONER CONTENDS THAT IT WAS PLAIN ERROR TO ADMIT
THE STATEMENTS OF DETECTIVE WOJCIK THAT "ANDY (MONTANEZ)
CORROBORATED WHAT THEY (SALGADO) TOLD US" WAS HIGHLY PREJUDICIAL,
IT AFFECTED JURY DELIBERATIONS AND IT DEPRIVED HIM OF A FAIR TRIAL
AND ERROR WAS NOT HARMLESS.

1          A   Correct.

2          MR. DARMAN: Actually I would object at this

3    time.   Drug cases. I want to make sure we're all

4    clear.   There were two.

5          THE COURT:  So noted.

6          MR. LOPEZ:

7          Q   The drug cases you were being charged

8    with, is that right?

9          A   Yes.

10         Q   And the detective came and started asking

11   you questions, is that right?

12         A   Yes.

13         Q   In fact, it was you who told the officers

14   or detectives that you wanted to speak to them, is

15   that right?

16         A   Correct.

17         Q   You wanted to speak to them because you

18   wanted to tell about a murder, is that right?

19         A   Yes.

20         Q   And you were hoping to cooperate with

21   them at that time, is that right?

22         A   Correct.

23         Q   And you were hoping by cooperating with

24   them that something could be done with your cases,

77

EXIBIT 1

People of the State of Illinois OR      ☐ Municipal District _____   ☒ Criminal Division

Case No.(s) _98 CR 6089_

A Municipal Corp.

vs.

Charge(s) _DCS_

_Ignacio Salgado_
Defendant

(Statutory Citation(s))

I. R. # _946229_

Term of Probation: _30 Mo Prob_ Month
(Description)

S. I. D. # _____

_Concurrent 98 CR 8138_

F. B. I. # _____

## ORDER
## SENTENCE OF PROBATION

The Court orders that Probation is subject to the following conditions - that the defendant shall:

| | | | |
|---|---|---|---|
| (x) | Not violate any criminal statute of any jurisdiction. | ( ) | Mental Health Unit (Additional order required) |
| (x) | Refrain from possessing a firearm or other dangerous weapon. | ( ) | Employment / Vocational Training |
| (x) | Appear within 72 hours before the Adult Probation Department and comply with its rules and regulations. | ☒ | COMMUNITY SERVICES: Perform _130_ hours of community services as directed by the Probation Department, if qualified. |
| (x) | Not leave the State of Illinois without consent of the Court or without prior notification and approval of the Adult Probation Department. | ( ) | GED |
| (x) | Notify the Adult Probation Department of any change of address. | ( ) | Mandatory Work Program (Additional order required) |
| (x) | Pay a Probation Fee of $25.00 per month through the Adult Probation Department commencing immediately and for each month on Probation for the duration of the sentence. | ( ) | Home Confinement (Additional order required) |
| ( ) | Make Restitution to | ( ) | Intensive Probation Supervision (Additional order required) |
| | | ( ) | Intensive Drug Program (Additional order required) |
| | in the amount of $ | ( ) | Domestic Violence Program (Additional order required) |
| | payable through the Adult Probation Department on or before | ( ) | Sex Offender Program (Additional order required) |
| | _____, 19 ___ at $ _____ per month. | ☒ | Drug Testing (Additional order required) |
| | | ( ) | T. A. S. C. |

ENTERED

DILLARD

payable through the Adult Probation Department on or before

AUG 11 1998

( ) Pay CLERK OF CIRCUIT COURT
       CRIMINAL DIVISION
( ) Court Costs of $ _____
       JUDGE
( ) Other Fines: _____ $ _____

( ) Complete Alcohol and Drug Education Services Evaluation and follow recommendations.

Payment of Fines or Costs shall be as follows:

☐ Payable Instanter.

☐ Payable through Adult Probation Department.

☐ Payment in full on or before _____.

☐ Monthly payments in the amount of $ _____ per month.

OTHER: _130 hrs Community Ser_
_Drug Testing and treatment_
_Gang Re-education ser_

_Entered._
_stamp date_
_should be_
_8/12/98_

DATED: _____ ENTE

* * * * * * * * * * * *

I acknowledge receipt of this Order and agree to abide by the conditions. : change of address and answer any questions asked by the Court about my behavior disposition could result in a new sentence up to the maximum penalty for the offense

below or a
is sentence

_[signature]_
Defendant's Signature

_2156 N Keystone 2nd Fl_
Defendant's Address

Print Defendant's Name

_(773) 227-6647_
Defendant's Phone Number

_Jennifer Coleman_
Print Assistant State's Attorney Name

_8/27/75_
Defendant's Date of Birth

AURELIA PUCINSKI, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS   EXHIBIT 2

CCCR-N704 / REV. 7/96 (73420157)

1   STATE OF ILLINOIS    )
                          )   SS:

2   COUNTY OF COOK      )

3           IN THE CIRCUIT COURT OF COOK COUNTY
          COUNTY DEPARTMENT-CRIMINAL DIVISION

4

    THE PEOPLE OF THE                )

5   STATE OF ILLINOIS             )
                                   )

6         vs.                     )   No. 98 CR 6089
                                   )   and 98 CR 8138

7   IGNACIO SALGADO,            )
                                   )

8         Defendant.          )

9

10                 REPORT OF PROCEEDINGS

11         BE IT REMEMBERED that on the 12th day of

12   August, A.D., 1998, this cause came on for hearing

13   before the Honorable RONALD A. HIMEL, Judge of said

14   court, at the Criminal Courts Building, Room 404, 2600

15   South California Street, Chicago, Illinois at

16   approximately 9:30 a.m.

17

      APPEARANCES:

18

                  HON. RICHARD A. DEVINE,

19              State's Attorney of Cook County, by
                MS. JENNIFER COLEMAN,

20              Assistant State's Attorney,
                    on behalf of the People;

21

                  MR. GEORGE BECKER,

22              Attorney-at-law,
                    on behalf of the Defendant.

23

24

(EXIBIT 2A)

```
1              THE CLERK:  Cabrera and Salgado.

2              THE COURT:  You are chargd with a Class 2

3    felony.  Do you understand what you are charged with?

4              THE DEFENDANT:  Yes.

5              THE COURT:  A Class 2 felony is punishable

6    by anywhere from --

7                        (Discussion was had off

8                         the record.)

9              MS. COLEMAN:  One is a Class 1.

10             THE COURT:  Which one?

11             MS. COLEMAN:  8138 is a Class 1.

12             THE COURT:  All right.  You are charged with

13   a Class 1 felony.  It is a probationable Class 1

14   felony.  It is punishable by a minimum sentence.  If

15   you were to be sentenced to the penitentiary, it would

16   be 4 years Illinois Department of Corrections, maximum

17   sentence is 15 years Illinois Department of

18   Corrections, subject to a $200,000 fine, 3 years of

19   mandatory supervised release because of the amount of

20   drugs sold in this Class 1 felony.

21             It is probationable and in exchange for

22   your plea of guilty here today over my own objection,

23   the State's Attorney's objection and the City of

24   Chicago's objection but based on a review of the
```

2

1   Probation Department's examination showing you have no

2   prior criminal record I feel that a period of

3   probation with some intervention with help for you is

4   the appropriate sentence.

5            So after a conference I have agreed,

6   even though I don't want to, to a sentence of 30

7   months probation with the recommendations --

8            Which are on what page?

9       MS. COLEMAN: They are on page 5 -- I am

10  sorry, judge. It's on page 7.

11      THE COURT: The proposed plan. The following

12  plan benefits the defendant's rehabilitation. As part

13  of the probation, you are going to have to go --

14           Where are they talking about, the Gang

15  Intervention Unit? That would be in custody.

16           All right. The probation is going to be

17  30 months probation, 130 hours of community service,

18  substance abuse testing and treatment and gang

19  re-education groups.

20           Are you going to be able to do this?

21      THE DEFENDANT: Yes, sir.

22      THE COURT: Is that what you want me to do?

23      THE DEFENDANT: Yes, sir.

24      THE COURT: Do you understand by pleading

1    guilty you are giving up your right to plead not

2    guilty and have a trial in these two matters?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Do you understand by pleading

5    guilty you are giving up your constitutional right to

6    a trial by jury?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Do you understand by pleading

9    guilty you are giving up your right to confront and

10   cross examine the State's witnesses?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Do you understand you are giving

13   up your right to call any witnesses you might have or

14   testify yourself?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Do you understand that you are

17   giving up your right to force the State in each of

18   these cases to prove you are guilty beyond a

19   reasonable doubt?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  You are entering these pleas of

22   guilty freely and voluntarily?

23           THE DEFENDANT:  Yes.

24           THE COURT:  You are only entering these pleas

4

```
 1    of guilty so that -- and it is your understanding that
 2    I am going to sentence you to probation, is that
 3    correct?
 4              THE DEFENDANT:  Yes, sir.
 5              THE COURT:  That is what you want me to do?
 6              THE DEFENDANT:  Yes, sir.
 7              THE COURT:  The court finds the defendant
 8    knowingly and intelligently understands the
 9    consequences of his pleas of guilty.  The pleas of
10    guilty will, therefore, be accepted.
11              State, kindly advise me of the facts you
12    have that you would expect to prove if this case were
13    to go to trial so I can make a factual basis for the
14    plea of guilty, including any statements by the
15    defendant that you believe should be under oath.
16              If you will raise your right hand at
17    this time and be sworn to tell the truth.
18                        (Defendant sworn.)
19              State, you may proceed.
20         MS. COLEMAN:  Judge, with regard to case
21    number 98 CR 8138, if called to testify Officer
22    Tavelez (phonetic sp.), star number 11155, assigned to
23    Unit 156, Chicago Police Department, would testify
24    that he was on duty on December 12th of 1997 at
```

1   approximately 7:30 p.m. in the area of 4200 West

2   Armitage in Chicago, Cook County, Illinois.

3                    He entered a tavern located at that

4   address and he met with the defendant whom he would

5   identify in open court as the man standing to my left

6   in the black tee shirt.  The defendant approached the

7   officer --

8            THE COURT:  That would be Ignacio Salgado for

9   the record?

10           MS. COLEMAN:  Yes.

11                    At that time the defendant approached

12  the officer, asked the officer how many bags he

13  needed.  The officer said he needed 10 bags to hold

14  him over for the holidays -- I am sorry, a $10 bag.

15  The officer then handed Salgado a $10 bill.  Salgado

16  then motioned over to a co-defendant.  The

17  co-defendant came over to the undercover officer.  The

18  undercover officer and the co-defendant then went into

19  another area of the bar where the undercover officer

20  was handed a bag that he believed contained suspect

21  cocaine.

22                    That bag was inventoried under

23  inventory --

24                    I am sorry.  Do you want to just swear

6

1    him in to that part so far?

2              THE COURT:  Is that true?

3              THE DEFENDANT:  Yes, sir.

4              MS. COLEMAN:  That bag was then inventoried

5    under inventory 1895637.

6              If called to testify, David Schlewitt,

7    S-c-h-l-e-w-i-t-t, would be qualfied to testify as an

8    expert and to render an expert opinion within a

9    reasonable degree of scientific certainty in the field

10   of forensic chemistry.  He analyzed and weighed the

11   evidence inventoried under 1895637, properly employing

12   all testing procedures commonly recognized and

13   accepted in the scientific community for ascertaining

14   the presence of a controlled substance.

15             He tested 8 of the bags and they tested

16   positive for 1.1 grams of cocaine.  The additional 2

17   bags were not tested but weighed an estimated .2

18   grams.

19             MR. BECKER:  Judge, we would stipulate that

20   is the State's case in chief.

21             THE COURT:  The court certainly finds a

22   factual basis for a plea of guilty to that charging

23   document.

24             MS. COLEMAN:  With regard to case number 98

7

1    CR 6089, if called to testify Officer Tavelez, star

2    number 11155, assigned to Unit 156 of the Chicago

3    Police Department would testify that he was on duty

4    on October 17th of 1997 at approximately 5:30 p.m. in

5    the area of 4200 West Armitage in Chicago, Cook

6    County, Illinois.

7            At that time he entered a tavern located

8    at that address and he met with the defendant whom he

9    would identify in open court as Ignacio Salgado

10   standing to my left in the black tee shirt.

11           When he entered the tavern, the

12   defendant approached him, asked him how many bags he

13   wanted.  The undercover officer said 4.  The defendant

14   then produced 4 clear plastic bags of suspect rock

15   cocaine, handed them to the officer in exchange for

16   $40 dollars United States currency.

17           The officer then inventoried those four

18   bags under inventory number 1859394.

19           If called to testify, Monica Kinslow,

20   K-i-n-s-l-o-w, would be qualified to testify as an

21   expert and to render an expert opinion within a

22   reasonable degree of scientific certainty in the field

23   of forensic chemistry.  She analyzed and weighed the

24   evidence inventoried under 1859394, properly employing

8

1   all tests and procedures commonly recognized and

2   accepted in the scientific community for ascertaining

3   the presence of a controlled substance.

4             She tested one of the bags and it tested

5   positive for less than .1 gram of cocaine.  The

6   additional three bags were not tested but weighed an

7   estimated .2 grams.

8           MR. BECKER:  Stipulate that would be the

9   State's case in chief.

10            THE COURT:  The court does find a factual

11  basis for the plea of guilty.  Plea of guilty, finding

12  of guilty, judgment on my finding.

13             Anything in aggravation?

14          MS. COLEMAN:  Judge, the defendant has

15  several misdemeanor arrests.

16            THE COURT:  Anything in mitigation?

17             Actually you have no prior convictions.

18          MR. BECKER:  No felony convictions.

19          THE COURT:  There is a paper trail here that

20  indicates you may not be able to finish this

21  probation.  Do you understand what I am

22  saying?

23             And I got to tell you quite honestly

24  that both the State and I because of the nature of

1     these transactions would indicate that the proper

2     place for you probably is the penitentiary; and I have

3     to tell you that if you do violate any terms or

4     conditions of the probabion, so listen carefully

5     before you make your decision, some people think

6     probabion is easy but if you violate the terms and

7     conditions of probation, such as if you drop dirty,

8     okay, if you are found in possession of an illegal

9     substance, namely cocaine, we are talking about coming

10    back before me, having a hearing.

11          And there is a different burden of

12    proof. The State only has to prove by a preponderance

13    of the evidence that you violated the probation. If

14    they can show that you violated my probation, the

15    chance we are giving you here today because of all the

16    things your lawyer has indicated to us, that you at

17    this point are worth saving even though the facts in

18    these two cases would indicate you should go to the

19    penitentiary and your lack of real criminal

20    background, your age, the fact that there is some hope

21    you can lead a productive life, we are going to give

22    you that chance.

23          THE DEFENDANT: Thank you.

24          THE COURT: If you violate though, I am not

1    going to hesitate.

2              THE DEFENDANT:  I understand.

3              THE COURT:  We are talking about a 4 year

4    minimum sentence.  So you can't drop dirty.

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  You can't violate any of the laws

7    of the United States.  Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Are we going to be able to do

10   this?

11             THE DEFENDANT:  Yes.

12             THE COURT:  You are sure?

13             THE DEFENDANT:  Yes, I am positive.

14             THE COURT:  This is what you want me to do?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  I am almost hoping that you don't

17   do it because basically the police work involved here,

18   all the work that was done to clean up an area that

19   complaints are tremendous and that is almost

20   everywhere in the City of Chicago, you know.  When I

21   see that the citizens and everybody is making a

22   concerted effort to rid some communities of this awful

23   disease that is happening in this country, this is the

24   awful disease of the sale and profit made from selling

11

1    cocaine and other drugs, we have to stop it. It is

2    destroying the whole inner structure of the city.

3           So whenever they make plans to do this

4    then the courts should set a system that if you are

5    proven guilty of these charges you should be punished

6    for this because it is such a serious crime.

7           Do you understand what I am saying?

8       THE DEFENDANT: Yes.

9       THE COURT: The only thing that saves you is

10   that you have this lack of prior criminal record, your

11   age and the fact that in some ways we can best salvage

12   and save the taxpayers some money if you will just

13   stay out of trouble and get on with your life and

14   become a useful and productive citizen.

15          If you are not willing to do that, then

16   you might as well go through that door and go to the

17   penitentiary.

18          So tell me now what you want to do.

19       THE DEFENDANT: Probabion, your Honor.

20       THE COURT: You are going to be able to

21   undergo drug tests, you are going to be able to

22   participate in this gang re-education, your ideas

23   about what your family and life should be?

24       THE DEFENDANT: Yes.

1    THE COURT: All right. After a hearing in

2   aggravation and mitigation, the sentence of this court

3   as to Ignacio Salgado is 30 months probation with a

4   proposed time of supervision for the benefit of the

5   defendant's rehabilitation as proposed by the

6   Probation Department in the pre-trial investigation.

7    So you are going to be on 30 months

8   probation on both these cases. They are going to run

9   concurrently.

10    When the Probation Department says you

11   have to be at a certain place, your only answer is

12   what time. If they tell you you have to go to drug

13   rehab, what time.

14    You can't miss any of that. That would

15   be a violation. Do you understand?

16    THE DEFENDANT: Yes, sir.

17    THE COURT: I have a good rapport with many

18   of the people working in the Probation Department so

19   it is not a good idea not to get along with the people

20   you are talking to from Probation.

21    THE DEFENDANT: I understand.

22    THE COURT: All right. The sentence is 30

23   months probation, conditions being the proposed

24   supervision plan set forth in the presentence

13

```
1    investigatin for the benefit of the defendant's

2    rehabilitation  I can only have my fingers crossed

3    that that will happen.

4                    I say to you good luck, young man, but

5    don't violate this probation.  We are talking about

6    bring your toothbrush if you do.

7              THE DEFENDANT:  I understand.

8              THE COURT: You certainly have a right to

9    appeal the sentence and judgment entered here today.

10   You have 30 days from today's date to file with this

11   court a written motion asking me to allow you to

12   withdraw your plea of guilty setting forth the reasons

13   why you feel I should allow you to withdraw your plea

14   of guilty.  Do you understand that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Do you understand that must be in

17   writing?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Do you understand if you are

20   indigent, I will appoint an attorney to help perfect

21   your rights to filing that motion?

22             THE DEFENDANT:  Yes.

23             THE COURT:  If I rule against you on that

24   motion, you will have 30 additional days to file a
```

14

1  motion for appeal and ask for a stenographic transcrpt

2  of the proceedings.  That too must be in writing and

3  certainly if you are indigent I will appoint an

4  attornty to perfect your right to appeal.  Do you

5  understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Good luck.

8                      (Which were all the proceedings

9                       had in the hearing of the

10                      above-entitled cause.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

15

```
 1   STATE OF ILLINOIS  )
                        )  ss:
 2   COUNTY OF C O O K  )

 3

 4

 5             I, LINDA K. MADISON, a Certified

 6   Shorthand Reporter, do hereby certify that I reported

 7   in shorthand the proceedings had in the above-entitled

 8   cause and that the foregoing is a true and correct

 9   transcript of my shorthand notes so taken as

10   aforesaid, and contains all the proceedings had at the

11   aforementioned hearing before the Honorable RONALD A.

12   HIMEL.

13             IN WITNESS WHEREOF, I have hereunto set

14   my hand in Chicago, Illinois this 18th day of August,

15   A.D. 2008.

16

17             _____
                Official Court Reporter
18              License #084-000970

19

20

21

22

23

24
```

```
 1   STATE OF ILLINOIS )
                       )
 2   COUNTY OF C O O K )

 3           IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                 COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
     THE PEOPLE OF THE      )
 5   STATE OF ILLINOIS      )
                            )
 6                          )
          -vs-              )   No. 98 CR 8138
 7                          )
     IGNACIO SALGADO        )
 8                          )

 9           REPORT OF PROCEEDINGS had at the hearing of

10   the above-entitled cause, before the Honorable RONALD

11   A. HIMEL, Judge of said Court, on the 11th day of May,

12   A. D., 2000.

13
         APPEARANCES:
14
         HONORABLE RICHARD A. DEVINE,
15         State's Attorney of Cook County, by:
           An Assistant State's Attorney,
16         appeared  on behalf of the People;

17       MR. EDWIN A. BURNETTE,
           Public Defender of Cook County, by:
18       MR. ALPHONSO PALMER,
           Assistant Public Defender,
19         appeared on behalf of the Defendant.
                      ***********
20
     MS. BARBARA J. KIMBROUGH, CSR
21   Official Court Reporter
     2650 South California
22   Room 4 C 02
     Chicago, Illinois 60608
23

24
```

1

EXIBIT 3

I N D E X

1

2

3       Date of hearing:   5-11-00

        Pages 1 through 8

4       Continuance........

5

6                           * * * * * * * * * * * * * * * * *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1              THE COURT: Sheet One, Ignacio Salgado.

2              THE PROBATION OFFICER: Your Honor, we ask

3  leave to file a violation of probation in that the

4  Defendant was terminated from community service the

5  third time on 4-11-2000.  He also tested positive for

6  drugs two times.

7              THE COURT: What is he on my probation for?

8  Give me a hint.

9              THE PROBATION OFFICER: Narcotics.

10            THE COURT: Okay.  Public Defender appointed,

11  at least to find out if the man can speak.

12            THE DEFENDANT: Yes.  This is the third time

13  they switched my probation officer.  The last three

14  drops, one was back August 9th, my first probation.

15  Officer never violated for that one. The third

16  probation officer that I had --

17             THE COURT: What is he testing positive for?

18             THE PROBATION OFFICER: Cocaine, marijuana.

19            THE PUBLIC DEFENDER: The first test they are

20  saying was positive back in August.  And then he had a

21  second positive in January. And that was the only

22  positives. So, it appears that he had a couple of

23  short lapses.

24            THE COURT: How about the community service?

1          THE DEFENDANT:  Sir, I work 55 hours a week.

2          THE COURT:  That is not an excuse, sir.

3  Where do you work?

4          THE DEFENDANT:  Manufacturing company in

5  Cicero.

6          THE COURT:  What do you do?

7          THE DEFENDANT: Shipping and receiving.

8          THE COURT:  If I tested you today, what would

9  you test?

10          THE DEFENDANT:  Positive for marijuana, sir.

11          THE COURT:  Positive for marijuana?

12          THE DEFENDANT:  I have been clean for two

13  weeks. I have been an addict since I was 23 years old.

14          THE COURT:  We are talking about cocaine?

15          THE DEFENDANT: Marijuana.  No cocaine, sir.

16          THE COURT: What are we going to do about

17  this?

18          THE DEFENDANT:  Sir, if I can?

19          THE COURT: Well, obviously you convinced me

20  that -- before you started speaking, when I thought

21  you didn't understand what we were doing or what had

22  happened, you now convinced me that you are

23  intelligent, you are honest, you are worth saving.

24  Tell me what I've got to do.

1          THE DEFENDANT:  I will do my community

2   service.

3          THE COURT:  You come this  -- we can't get

4   this done.

5              You failed three times.  Is that because

6   you are working so much?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  What is the community service?

9   The man is working 50 hours a week. If he has proof of

10  that, somebody in the probation office out to bring

11  that to my attention.

12         THE PROBATION OFFICER:  Your Honor, the

13  Defendant was ordered to complete 130 hours.

14         THE COURT:  He had a private attorney. I will

15  continue this for a month.  Get him tested

16  immediately. Get a stay on the community service.

17             If we get verification he is working 55

18  hours a week, I will vacate the community service

19  portion.

20             You are allowed to fail sometimes before

21  you realize what you want to do.

22         THE DEFENDANT:  Your Honor, I have been on

23  probation since August 16th of 1998.  This is only the

24  second time that I have dropped.  I haven't had no

1  arrests.

2  THE COURT: He has two charges. I have two

3  cases. One is under 15 grams. The other looks like

4  two hand-to-hand deliveries to undercover police

5  officers at the time.

6  THE STATE'S ATTORNEY: Gang affiliation.

7  THE DEFENDANT: Yes, sir. I'm not no more.

8  THE COURT: What was it?

9  THE STATE'S ATTORNEY: The Spanish Cobras.

10  THE COURT: Family?

11  THE DEFENDANT: Yes, sir.

12  THE COURT: Here is what I'm going to do: I

13  have heard from this gentleman. He says he is not

14  having a problem with the cocaine. You tell me this

15  marijuana is a recreation.

16  Here is what I want you to do: I want

17  you to sit down with Fonz, your new attorney, and I

18  want you to give me somebody verifying employment. I

19  need to have him drug tested.

20  Hearing on violation of probation

21  commenced and continued. I want him tested in a month

22  from now. So, whenever you do it, that stuff stays in

23  their system for about 28 days.

24  Isn't there something you can buy at

1  Walgreens that covers this, correct? Is something?

2  At least you have been covering stuff like this.

3  I want to know if he is using cocaine. I don't

4  necessarily want him to be dropped today. What I want

5  him to do is not interrupt his work.

6          I want probation to be a little more

7  agreeable with this young man's work schedule. If he

8  is working -- that community service is a nice thing.

9  But if he is working 55 hours, a new Petition  -- we

10 will make the modification and in fact we will have

11 the hearing next time it is up.

12         If he is not positive for cocaine,

13 verification of working for good cause shown, honesty

14 being one of them, we will terminate satisfactorily

15 next month. But let's have a hearing.

16         Violation of probation hearing commenced

17 and continued. Cocaine  -- you test him today. He

18 said he used marijuana two weeks ago?

19       MR. PALMER: He is going to test positive for

20 marijuana. That, we know.

21       THE COURT: 6-15 is fine, 2000.

22              (WHEREUPON, further proceedings in

23               the above-entitled cause were

24               continued to 6-15-00).

7

STATE OF ILLINOIS )
                  ) SS:
COUNTY OF C O O K )

I, BARBARA J. KIMBROUGH, CSR, Official Court
Reporter of the Circuit Court of Cook County, County
Department - Criminal Division, do hereby certify that
I reported in shorthand the proceedings had at the
hearing in the above-entitled cause; that I thereafter
caused to be transcribed into typewriting the above
Report of Proceedings, which I hereby certify is a
true and correct transcript of the proceedings heard
on said date, before the Honorable RONALD A. HIMEL,
Judge of said court.

_____
Official Court Reporter
Circuit Court of Cook County
Criminal Division

8

1        THE COURT: I sustained it.

2        MR. LOPEZ:

3        Q   That was September 28th, 1990 when you

4   were 17 years old, is that right?  Or 16 years

5   old?

6        A   I believe so, correct.

7        Q   And when you used the name Ignacio

8   Salgado, that was in 1993 and you were no longer a

9   minor, is that right?

10       A   Correct.

11       Q   And while you were on probation, you also

12   violated your probation, didn't you?

13       A   Yes. I didn't finish my community service

14   because I was working 55 hours a week.

15       Q   You still violated it, is that right?

16       A   Yes.

17       Q   And then in June, your probation was

18   terminated, is that right?

19       A   Yes, I showed proof to the Judge that I

20   was doing 55 hours of work per week and that I was

21   taking care of my son and I was unable to finish

22   my community service and do my hours.

23       Q   So the Judge gave you an award?

24       A   Yes, he let me finish my probation early

EXIBIT 4

1    because he thought that was too much time for me

2    to be doing probation for.

3        Q  He was also happy you were testifying in

4    a murder case too, wasn't he?

5        MR. MALONEY: Objection.

6        MR. DARMAN: Objection.

7        THE COURT: Sustained to what the Judge

8    thought.

9        MR. LOPEZ:

10       Q  The State's Attorney was happy you were a

11   witness in a murder case?

12      MR. MALONEY: Objection.

13      MR. DARMAN: Objection.

14      THE COURT:  Sustained.

15      MR. LOPEZ:

16      Q  You don't think the State intervened at

17  all in your Violation of Probation while you were

18   a state witness in this case?

19      MR. DARMAN: Objection.

20      MR. MALONEY: Objection.

21      THE COURT:  I sustain the objection.

22      MR. LOPEZ:

23      Q  Now, again, in 1995, at the time of the

24   meeting, I think you said there was about 15 or 20.

110

EXIBIT 4A

```
 1     STATE OF ILLINOIS  )
                          )  SS:
 2     COUNTY OF C O O K  )

 3          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
               COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
       PEOPLE OF THE STATE      )
 5     OF ILLINOIS,             )   Criminal
                                )
 6            Plaintiff,         )
                                )
 7       VS                     )   Case No.   98 CR 6088
                                )              98 CR 8138
 8     IGNACIO SALGADO,         )
                                )
 9            Defendant.        )

10

11                    REPORT OF PROCEEDINGS had at the

12     hearing of the above-entitled cause, before the

13     HONORABLE RONALD A. HIMEL, Judge of said court, on the

14     15th day of June, A.D., 2000.

15          PRESENT:
                   MR. RICHARD A. DEVINE,
16                 State's Attorney of Cook County, by:
                   UNIDENTIFIED STATE'S ATTORNEY,
17                 Assistant State's Attorney,
                      appeared for the people;
18

19                 UNIDENTIFIED DEFENSE ATTORNEY,

20

21     Cecilia A. Peterson, CSR
       Official Court Reporter
22     Circuit Court of Cook County
       Criminal Division
23     CSR # 084-001826

24
```

EXIBIT 5

1    Proceedings of 6-15-00
     Pages 1 through 4
2
                      I N D E X
3
     probation terminated......3
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1      THE CLERK: Ignacio Salgado.

2      UNIDENTIFIED SPEAKER: Judge, you will recall this

3   is a case we had up about a month ago. Your Honor had

4   him tested that day to see if he was going to test

5   positive or negative. I attempted to contact his job.

6   They never contacted me back but he did bring his

7   most recent pay stub where he brought yesterday with

8   13 hours of overtime. Judging by the fact he's

9   informed me the type of work they do the main office

10  they're usually not in the office, they're usually on

11  the floor.

12     THE COURT: Where is he or --

13     THE PROBATION OFFICER: 2-10-2001.

14     THE COURT: Recommit to probation, original terms.

15     UNIDENTIFIED PUBLIC DEFENDER: Your Honor, can

16  you just terminate it because of his work?

17     THE COURT: Probation terminated satisfactorily.

18                          (WHICH WERE ALL THE

19                          PROCEEDINGS HAD IN THE

20                          ABOVE-ENTITLED CAUSE)

21

22

23

24

1    STATE OF ILLINOIS  )
                     )  SS:

2    COUNTY OF C O O K  )

3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT - CRIMINAL DIVISION

4

5         I, CECILIA A. PETERSON, Official Court

6    Reporter of the Circuit Court of Cook County, County

7    Department - Criminal Division, do hereby certify that

8    I transcribed the foregoing Report of Proceedings

9    from the notes of CHRISTINA ADAMS, a Certified

10   Shorthand Reporter, and that the foregoing is a true

11   and correct transcript of said Report of Proceedings

12   as appears from the stenotype notes had before the

13   Honorable RONALD A. HIMEL, Judge of said court.

14

15

16

17

18                  Official Court Reporter

19   Dated this 28th day of July, 2009.

20

21

22

23

24

```
CASE: 98CR0608801 S  (START OF FELONY CASE)        PAGE: 001 OF  004            PROD
 DEFENDANT NAME: IGNACIO      SALGADO              LST APPEAL:
GENERAL INFORMATION
  CB: 010967420 IR: 0946229 SID:         FBI:              RD: B667198

ATTORNEY INFORMATION

  SEQ ATTY NBR      ATTORNEY NAME            FIRST APPEAR  ASSIGN CD
  001  51060   BECKER GEORGE E                 042498         A

CHARGE INFORMATION

NBR A TYPE CLASS CHAPTER/SECTION                     DESCRIPTION
001    F    1    720-570/401(C)(2)                   MANU/DEL 01-15 GR COCAINE

DISPOSITION INFORMATION




ENTER=CONT PF3=RETN PF7=BKW PF8=FRW PF9-APPL PF10=RESET PF12=PRINT CLEAR=EXIT
=> PRINT THE FOLLOWING PAGES PAGE: 001 THRU 004 DESTINATION ____
```

EXIBIT 6

(A) Passport ZWS 1:13PASSPORT Case: 1:13-cv-05939 Document #: 1 Filed: 08/02/13 Page 47 of 64 PageID #:470, 09:15:06

```
CASE: 98CR0608801 S  (START OF FELONY CASE)      PAGE: 002 OF  004      PROD
 DEFENDANT NAME: IGNACIO      SALGADO          LST APPEAL:
022798-
IND/INFO-CLK OFFICE-PRES JUDGE   031398          1701       CR0608801 I
     98CR0608801 ID# CR100171164
CLERK'S OFFICE 26TH & CALIFORNIA        0900 AM

031398-
CASE ASSIGNED                    031398          1731
FITZGERALD, THOMAS R.
ROOM 101      26TH & CALIFORNIA         0930 AM

031398-
DEFENDANT ON BOND
HIMEL, RONALD A.
ROOM 206      26TH & CALIFORNIA

031398-
MOTION DEFT - CONTINUANCE - MD   042498
HIMEL, RONALD A.
ROOM 206      26TH & CALIFORNIA         0930 AM

ENTER=CONT PF3=RETN PF7=BKW PF8=FRW PF9-APPL PF10=RESET PF12=PRINT CLEAR=EXIT
=> PRINT THE FOLLOWING PAGES PAGE: 001 THRU 004 DESTINATION _____
```

6A

CASE: 98CR0608801 S   (START OF FELONY CASE)          PAGE: 003 OF  004          PROD
 DEFENDANT NAME: IGNACIO        SALGADO            LST APPEAL:

042498-
DEFENDANT ON BOND
ROOM 206       26TH & CALIFORNIA

042498-
APPEARANCE FILED
ROOM 206       26TH & CALIFORNIA

042498-
CONTINUANCE BY AGREEMENT          052998
ROOM 206       26TH & CALIFORNIA       0930 AM

052998-
DEFENDANT ON BOND
HIMEL, RONALD A.
ROOM 206       26TH & CALIFORNIA


ENTER=CONT PF3=RETN PF7=BKW PF8=FRW PF9-APPL PF10=RESET PF12=PRINT CLEAR=EXIT
=> PRINT THE FOLLOWING PAGES PAGE: 001 THRU 004 DESTINATION _____

6B

```
CASE: 98CR0608801 S  (START OF FELONY CASE)        PAGE: 004 OF  004        PROD
  DEFENDANT NAME: IGNACIO      SALGADO              LST APPEAL:
052998-
NOLLE PROSEQUI                                       ·C001
HIMEL, RONALD A.
ROOM 206      26TH & CALIFORNIA

052998-
DEF DEMAND FOR TRIAL
HIMEL, RONALD A.
ROOM 206      26TH & CALIFORNIA

END OF FILE
```

```
ENTER=CONT PF3=RETN PF7=BKW PF8=FRW PF9-APPL PF10=RESET PF12=PRINT CLEAR=EXIT
=> PRINT THE FOLLOWING PAGES PAGE: 001 THRU 004 DESTINATION ____
```

6C

1    during that conversation?

2          A.    For the most part the state's attorney,

3    Miss Stephens, but I would ask some questions also at

4    that time.  This was the first time that he was

5    admitting something to us.  So, I was asking some

6    questions also.

7          MR. DARMAN:  May I have one brief moment,

8    Judge?

9          Q.    Detective -- I am sorry.  Sergeant, you

10    told us at one point during your investigation in your

11    conversations with Mr. Suastegui, you showed him a

12    photograph of Andy Montanez and told him that you had

13    heard another version of the shooting of Daniel Matias,

14    is that correct?

15          A.    That's correct.

16          Q.    To your knowledge, had you or your

17    partner ever shown Manuel Suastegui a photograph of

18    Andy Montanez prior to that?

19          A.    Yes, we had.

20          Q.    When was that?

21          A.    That was in the initial interview the

22    first interview where he was looking at pictures, and

23    he identified Ramiro and Iggy.  In those group of

24    pictures with Iggy, we had a picture of Andy Montanez

EXIBIT-7

1       A.      Tiger.  That's correct.

2       Q.      And the gang book is kept in the area, is

3   that right?

4       A.      Yes.

5       Q.      And that's the known members of certain

6   gangs are in different books, is that correct?

7       A.      Correct.

8       Q.      And there's several books besides the

9   book -- and -- and what I'm trying to stress is for

10  every gang you try to keep a book of photos more or

11  less, is that right?

12      A.      Well, in Area 5, it's people that we

13  arrest for the most part that are in those books.

14  There may be 14 districts that has their gangs book,

15  gang investigation it has their gangs books.  Our's

16  aren't as inclusive as others.  So, our's, we keep what

17  we can in there.

18      Q.      And the book that you showed him, I'm

19  talking about Iggy, that contained photos of known

20  Spanish Cobras, is that right?

21      A.      Yes.

22      Q.      To your area?

23      A.      Yes.

24      Q.      Now, you indicated that after you talked

EXIBIT-8

1      to -- to Ignacio Salgado, he gave you a name of Andy,

2      is that right?

3            A.    That's correct.

4            Q.    And you were trying to identify who Andy

5      was at that time, is that right?

6            A.    That's correct.

7            Q.    And you eventually were able to find out

8      who Andy was, is that correct?

9            A.    Yes.

10           Q.    And that was a person by the name of Andy

11     Montanez, is that right?

12           A.    That's correct.

13           Q.    And that's the same Andy Montanez that

14     appears in -- in photos from number -- People's Exhibit

15     40, those three photos, is that right?

16           A.    That's correct.

17           Q.    So, between January of 98 and until --

18     when was it that you located Andy Montanez, do you

19     recall?

20           A.    It was in August of 99.

21           Q.    And where was he located?  Do you recall?

22           A.    We found out that he was in custody in a

23     youth facility.  I believe it was Harrisburg.  We had

24     him remanded to Cook County.  He was an adult at the

EXIBIT 8A

1     time, but he was in custody for something he had done

2     when he was a juvenile. We had him brought to Cook

3     County. We picked him up from Cook County to interview

4     him in regards to this incident.

5          Q.    And he gave you a handwritten statement,

6     didn't he?

7          A.    Yes.

8          Q.    After you spoke to Andy, then you went

9     out to look for Ramiro Alvarez, is that right?

10          A.    Well, we talked to Andy, and he

11     corroborated what Iggy told us. So, at that point, we

12     want to speak to Iggy again. And on the 30th -- this

13     is when we made contact with Iggy. On the 31st, Iggy

14     went to the grand jury. And on September 1 is when we

15     arrested your client.

16          Q.    Okay.

17                 So, after you talked to Montanez

18     who was in custody when you spoke to him, he gave you a

19     statement?

20          MR. MALONEY:   Objection.

21          MR. DARMAN:   Objection.

22          THE COURT:   Basis?

23          MR. DARMAN:   Judge this is something that we

24     went into earlier.

EXIBIT 8B

1           MR. MALONEY:  Can we have a sidebar, Judge?

2           THE COURT:  Not at this time.  I'll allow it.

3  I would respectfully overrule the objection.  I

4  understand where you're going.

5           MR. LOPEZ:

6         Q.    And then after the statement and after

7  this -- this grand jury, then you found Mr. Suastegui,

8  is that correct?

9         A.    Correct.

10        Q.    Okay.

11           Ignacio Salgado testified in the

12  grand jury on August 31 of 99, is that right?

13        A.    That's correct.

14        Q.    In fact, you drove him here.  Maybe, not

15  you, but either you or Engel drove him here to this

16  building to testify, is that right?

17        A.    Yeah.  We picked him up.  That's correct.

18        Q.    You brought him here, and he testified in

19  front of the grand jury, correct?

20        A.    That is correct.

21        Q.    Now, after that, Mr. Suastegui was

22  located, is that right?

23        A.    The next day.  That's correct.

24        Q.    And that would be on September 1, is that

EXHIBIT 8C

1    in it, is that correct?

2              A.    That's correct.

3              Q.    He only picked two Cobras out of that

4    book?

5              A.    That's incorrect.  That's not what I

6    said.  I said he identified several people.

7              Q.    Okay.

8              A.    Many people.  But the ones we were

9    interested in were Tiger and -- and Iggy, and he did

10   not identify Montanez at that time, but he identified

11   lot of guys that he knew to be Cobras.

12             Q.    What were their names?

13             A.    I didn't document everybody he said he

14   knew.  He said I know this guy.  Who is that?  That's

15   Junior.  That's Shorty.  Who is this?

16             Q.    Why didn't you document it?

17             A.    Because they weren't germane to our

18   investigation.

19             Q.    How did you know that?

20             A.    Because he hadn't told me that any of

21   those -- we had no information that Junior or Shorty

22   had done anything.  We had information about Iggy being

23   involved.  As far as a witness, we had information

24   about Andy.  We had information about Gato.  So, when

                         202                          EXIBIT 9

1    information to charge him with the murder, is that

2    correct?

3          A.    Yes.

4          Q.    So, you didn't really need to talk to

5    him, did you?

6          A.    That's part of normal investigation to

7    interview somebody, you know. I mean, we have two

8    people stating he had done the shooting. We're going

9    to interview him to see what he says about it.

10         Q.    Okay.

11                 No matter what he said, you

12    wouldn't uncharge him?

13          A.    Well, he could tell me he was in

14    Minnesota. And if I could prove he was in Minnesota at

15    the time, then I know two people were lying. So, we

16    have to interview the arrestee.

17         Q.    Okay.

18                 In this case, I mean you weren't

19    present at the shooting, is that right?

20          A.    No, I was not.

21          Q.    So, you don't really know what the truth

22    is, do you?

23          MR. MALONEY:  Objection.

24          THE COURT:  I'll let the witness answer.

EXIBIT 10

1          A.    I believe that he was involved because

2     the two witnesses are corroborative of one another.

3     And it fits what I know the evidence can show, where

4     the victim was struck, how the bullets went through his

5     body, where the shots would have been fired from.  It's

6     all consistent.

7          MR. LOPEZ:  Okay.

8          Q.    You don't know who actually did the

9     shooting, though, do you?

10         A.    I believe your client did the shooting.

11         Q.    You don't know if Andy did the shooting,

12    do you?

13         A.    I don't believe Andy did it, no.

14         Q.    But you don't know because you weren't

15    there, right?

16         A.    I was not there.

17         Q.    So, you're just -- that's just your

18    opinion, is that right?

19         A.    My opinion, but -- yes, that's correct.

20         Q.    And Andy could be the shooter, couldn't

21    he?

22         MR. MALONEY:  Objection.  Form of the question,

23    Judge.

24         THE COURT:  I'd sustain the objection.

196

EXIBIT 10 A

1      MR. BECKER: Objection, asked and answered,

2   he already said no.

3      THE COURT:  I sustain the objection.

4      MR. DARMAN: All right Judge.

5      Q   Did you see Tiger do anything at that

6   time?

7      A   I remember him handing these guys a gun.

8      Q   What did the gun look like?

9      A   I think it was a blue steel revolver.

10     Q   Who did he hand it to?

11     A   Goto.

12     Q   To this guy here?

13     A   Yes.

14     Q   When he handed him the revolver, what

15  happened next?

16     A   He was on the side with Andy.

17     MR. LOPEZ: I can't hear anything he's

18  saying.

19     A   He was on the side.

20     MR. DARMAN: If you show him the microphone.

21     THE DEPUTY:  It's not working.

22     THE COURT:  Microphone is not working.

23  You're welcome to move up here if you like, pull

24  your chair up here.

32

EXIBIT 11

1        MR. DARMAN:

2        Q  Mr. Salgado, you have to keep your voice

3  up okay.

4        THE COURT:  All the jurors hear?  If you can

5  raise your hand if you cannot.  Let me know when

6  he drops his voice, I'll have him repeat the

7  answer.

8        MR. DARMAN: All right.

9        Q  You said Tiger gave Goto a gun, you say

10  he give him a blue steel revolver, right?

11        A  Yes.

12        Q  And there was a guy Andy standing there

13  too, right?

14        A  Yes.

15        Q  What happened next?

16        A  They walked off.

17        Q  Who walked off?

18        A  Goto and Andy.

19        Q  What happened to you?

20        A  I walked off on my own, stayed in the

21  hood.

22        Q  Were you given any instructions from

23  Tiger at that point in time?

24        A  To leave the hood alone, disappear.

EX. 11A

1       Q  What happened next?

2       A  5, 10 minutes later, I hear some

3  shooting, you know.

4       Q  You heard some shooting?

5       A  Yeah.

6       Q  What happened next?

7       A  Ran out like I go to Armitage and Keeler

8  because that's where I was waiting on a taco.  I'm

9  over there.

10      Q  Can you speak up a little bit, sir?

11      A  I go to Armitage and Keeler, and on my

12  way towards Armitage and Keeler that's when I hear

13  the shooting.

14      Q  Okay.

15      A  I'm waiting there, you know, I just hear

16  the shooting and that's when I know it went down.

17      Q  All right.

18      MR. BECKER: Objection.

19      THE COURT:  Sustained.

20      MR. LOPEZ: Objection.

21      THE COURT: Sustained.

22      MR. DARMAN:

23      Q  You're at Armitage and Keeler?

24      A  Correct.

37

EX. 11B

1    intent for this to be in your hands before noon

2    tomorrow.  So, we are starting earlier, and we hope

3    that we will be finished and have the case in your

4    hands.  We will see you tomorrow at 9:30 a.m..

5            THE SHERIFF:  All rise for the jury.

6                         (The following proceedings

7                         were had out of the

8                         hearing of the jury:)

9            THE COURT:  At 9:30, we will see you, Mr.

10    Becker, in the morning.  You are welcome to stay for

11    the balance if you wish.

12            MR. BECKER:  I think there might be too many

13    problems that might arise.

14            THE COURT:  Okay.  You may bring the jury out

15    then, the Suastegui jury.

16                  The record should reflect that

17    we've excused the Alvarez jury for the evening.  We are

18    calling back the Suastegui jury for cross-examination

19    and any redirect.

20            MR. DARMAN:  For the record, earlier on,

21    counsel, Mr. Lopez, and myself had some discussions

22    about mentioning Mr. Montanez.

23                But because of the turn that this

24    case has taken, and we discussed this in the back

EX. 12

1    earlier, we were going to be mentioning Mr. Montanez

2    originally. But we're not planning on putting on Mr.

3    Suastegui's statement. But because of your ruling,

4    your evidentiary rulings, we're going to do that now.

5                    And this detective, I had

6    discussions with earlier about not mentioning Montanez

7    when the state of the case was different. What I've

8    asked Mr. Lopez is if he minds at this point in time if

9    I tell the detective that it's okay to mention Mr.

10   Montanez and he said that's fine with him, is that

11   correct, Joe?

12              MR. LOPEZ: That's fine.

13              THE COURT: If there is any area which you

14   think should not be mentioned, I'll let you lead in

15   that area.

16              MR. DARMAN: We have discussed the fact, Judge,

17   there is to be no mention of the word polygraph. We

18   can say test -- or not even really test, another

19   investigation, something that doesn't say polygraph.

20              THE COURT: Right.

21              MR. DARMAN: So, we can mention Andy Montanez.

22              THE SHERIFF: All rise for the jury.

23              MR. DARMAN: Can you hold on, Carol?

24                    We can mention -- if it's all right

EX. 124

127

1    questions, but it came out on the State's direct.

2         MR. DARMAN:  I know Mr. Becker asked several

3    questions.  I am not sure if Mr. Lopez did or not.  It

4    did come up in front of both juries.

5         MR. LOPEZ:  Before we get into any inquiry

6    about about Mr. Suastegui's statement, I'm asking again

7    if I can open up my opening statement to get into this.

8    I didn't address that in my opening statement because

9    the State indicated they weren't going to use it.  So,

10   I didn't touch it.  So, I'm asking, before we get into

11   it, that I be allowed to reopen my opening statement

12   and talk to the jury about it and explain to them

13   what's going on.

14        THE COURT:  I'll leave that for closing

15   argument.  I would respectfully deny your request.

16        MR. DARMAN:  Judge, just so the record's clear,

17   when the State had indicated that it wasn't going to

18   call or wasn't going to put in Mr. Suastegui's

19   statement, that was several days ago, long before the

20   judge's -- long before your Honor's evidentiary ruling

21   that Andy Montanez could not testify.  We certainly had

22   no intention to sandbag counsel or anything.

23        THE COURT:  I understand.  So does Mr. Lopez.

24        MR. DARMAN:  Thank you.

EX. 13

129

1    the 9th?  Is that too soon?

2         THE COURT:   That's fine.

3         MR. BECKER:   Can we do it the 9th then?

4         THE COURT:   By agreement 12-9 for post-trial

5    motions.  We stand in recess for lunch until 2:15.  No

6    objection to the exhibits, Mr. Lopez?

7         MR. LOPEZ:   No objection.

8                        (Whereupon, there was a recess

9                        had in the above-entitled

10                       cause, after which the

11                       following proceedings were had:)

12        THE COURT:   I have a question from the jury.

13   I'll hear the lawyers in chambers.

14                       Question number one.  Did Gato sign

15   the statement as to being the lookout, question mark.

16   I've written in the answer, no.  Or was his admission

17   on a tape recording, did he testify before the grand

18   jury?  As to the second two questions, I simply

19   answered you have all of the evidence.  Please continue

20   to deliberate.

21        MR. LOPEZ:   The Defense requested that you

22   answer the other two questions just for the record

23   admission on tape recording no and testified before the

24   jury no.  That's what we'd request the Court to do.

EX.14

115